UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MICHAEL L. KOVENS,                                             04 Civ. 2238 (TPG)

                Plaintiff,                    (*Electronically Filed*)

   -against-

BRUCE H. PAUL,

                Defendant.

------------------------------------------------------------x

## MEMORANDUM OF LAW

Defendant Bruce H. Paul is submitting this memorandum of law in support of the defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56(a), to dismiss plaintiff's complaint which basically claims that there was an oral agreement between Kovens and Paul for Kovens to purchase Paul's shares in Universal Security Instruments, Inc. ("USI") on a date certain – November 2, 2001 – for a price certain.

This claim is belied by Kovens' own sworn statement at his deposition (Exhibit B, pp. 42-50), and his filing with the Securities & Exchange Commission ("SEC") under oath on December 24, 2001 (Exhibit A, p. 11, ¶5(c)).

Kovens claims that pursuant to some nebulous agreement with Paul, Kovens and Paul were to meet on November 2, 1004 and Paul was to sell certain stock in USI to Kovens.

Paul, of course, denies that this ever occurred but claims he agreed to meet with Kovens only to see if an agreement could be reached.

Kovens admits that at the November 2, 2001 meeting, Kovens advised Paul that he would not buy Paul's shares at that time and place, but claims there was an agreement that he would do so

at some indefinite time in the future.

Common sense tells us that no one would agree to sell his stock, which is publicly traded in the open market, to someone else for a specific price at some indefinite time in the future so that if the stock was selling for ten cents or ten dollars, the parties would still have an alleged oral agreement for the stock to be sold at some definite price at some future date. The mischief that this type of purported oral agreement could cause would not permit anyone to be safe from claims.

In this case, we also have Kovens' own statement to the SEC several weeks after the November 2, 2001 meeting in a Schedule 13D he filed on December 24, 2004, stating:

> To the knowledge of the Reporting Persons and except as set forth in the following sentence, no Reporting Person has any contacts, arrangements, understandings or relationships (legal or otherwise) with any persons with respect to securities issued by the Company.
> (see Exhibit A, p, 11, ¶5(c)

## POINT I

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, Inc. 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

In our case, there can be no issue as to whether or not there is a factual dispute. In our case, (a) Kovens testified at his deposition that on November 2, 2001 - the date he alleged there was supposed to be a deal – he refused to purchase Paul's stock because he would not be permitted to

vote that stock under Maryland law; and (b) within several weeks thereafter, on December 24, 2001, Kovens and his attorneys filed a sworn statement with the SEC which is basically an admission that there was no agreement with Paul.

A party may not take inconsistent positions. See, *Malamut v. Doris L. Sassower, P.C.*, 171 A.D.2d 780, 567 N.Y.S.2d 499 (1991); and *Environmental Concern, Inc. v. Larchwood Construction Corp.*, 101 A.D.2d 591, 476 N.Y.S.2d 175 (1988).

This entire lawsuit appears to have been brought for an ulterior motive, as a vehicle to obtain testimony for litigation Kovens is engaged in with other shareholders of USI in Maryland to gain control of USI. However, there is no reason why this case should not be dismissed since there are no issues of fact which remain for trial.

### POINT II

### THE PURPORTED CONTRACT, IF IT DID EXIST, IS BY KOVENS' ADMISSION SO VAGUE AND INDEFINITE THAT IT COULD NOT POSSIBLY BE BINDING

Although at times people do have oral contracts, an oral contract – like a written contract – must be definite enough so that it can be enforced. As the Court stated in *Charles Hyman, Inc. v. Olsen Industries, Inc.*, 227 A.D.2d 270, 642 N.Y.S.2d 306 (1st Dept. 1996):

> We begin by observing that the primary purpose of a contract is not to serve as a vehicle for litigation but to document the respective rights ana obligations of the parties to a particular transaction. Under the circumstances of this case, it is perhaps also appropriate to note, in the words of Samuel Goldwyn, "A verbal contract isn't worth the paper it's written on." In theory, of course, a parol contract is as enforceable as a written one. As a practical matter, however, for all but the simplest of transactions, the burden of establishing the terms of the verbal contract – which falls to the proponent (*Paz v. Singer Co.*, 151 A.D.2d 234, 235, 542 N.Y.S.2d 10, citing Fisch, Evidence §1098 [2d ed]) – presents a formidable obstacle to its enforcement.

3

> Before a court will impose contractual obligation, it must ascertain that a contract was made and that its terms are definite (*Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 548 N.E.2d 203, *cert. denied* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33). 642 N.Y.S.2d at 310

For a similar proposition, see, *Joseph Martin Jr. Delicatessen v. Schumacher,* 52 N.Y.2d 105 (1981).

When some terms are left out of a purported agreement, particularly an oral agreement, or even a written agreement, the purported agreement cannot be enforced.

In our case, Kovens has admitted that the purported date set forth in the complaint as a closing date, he refused to purchase Paul's stock (Exhibit B, pp. 47-51). He has also admitted in a sworn statement to the SEC that as of December 24, 2001 there was no agreement by Kovens with anyone to buy any shares of USI for anyone.

Accordingly, unless Kovens will now take the position that the closing was supposed to take place between November 2, 2001 and December 24, 2001 – something which he has not done to date and which the complaint does not allege – there was no agreement, either oral or written, between Paul and Kovens for Paul to sell Kovens anything.

As Paul's declaration sets forth, Paul simply agreed to meet with Kovens with attorneys because Paul had so little confidence that this proposed deal was ever going to take place that he would not even meet with Kovens unless Kovens agreed to pay for Paul's attorneys, which Kovens did.

As Paul explains, at the meeting on November 2, 2001 Kovens stated he had no interest in buying Paul's shares at that time because the only reason he had wanted to buy them was to vote

them in a proxy battle and since under Maryland law he was prohibited from doing so, he was not going to buy Paul's stock. That was the end of the matter!

It would be ludicrous to claim that without any fee or writing Paul gave Kovens an option to purchase Paul's stock at some time in the indefinite future for either an indefinite price or for the purported price that was supposed to take place on November 2, 2001 of $2.85 per share. USI is a stock which trades on the stock market and like every other stock, its price fluctuates. It belies common sense that an owner of stock would give someone else an oral option to purchase his stock in the indefinite future for a fixed price. In our case, if there was any doubt, Kovens' statement to the SEC on December 24, 2001 – that he had no agreement with anyone, including Paul, dissipates any such doubt.

There is also a principle that the court need not believe testimony which it is morally certain is untrue. As the Court stated in *Bottalico v. City of New York*, 281 App. Div. 339, 119 N.Y.S.2d 704 (1st Dept. 1953):

> Mindful as we are of the weight to be given a jury's verdict where the facts are disputed and issues of credibility are presented, we are not required to give credence to a story so inherently improbable that we are morally certain it is not true.

See also, *DeMayo v. Yates Realty Corp.*, 35 A.D.2d 700, 314 N.Y.S.2d 918 (1st Dept. 1970), where the Court stated:

> We are not required to give credence to testimony so inherently improbable that we are morally certain it is not true.

As the court stated in *Matter of Allen v. Black,* 275 A.D.2d 207, 712 N.Y.S.2d 487 (1st Dept. 2000:

> Finally, we reject petitioner's account as completely unworthy of belief. . .

> . . . As we said in *De Mayo v. Yates Realty Corp.* (35 AD2d 700, 701, AFFD 28 NY2d 894), "We are not required to give credence to testimony so inherently improbable that we are morally certain it is not true."

In our case, Kovens' claim that he had an oral agreement with Paul to buy Paul's stock at some indefinite time in the future, which is belied by his own sworn testimony to the SEC, is so unworthy of belief that a verdict in favor of Kovens would have to be set aside.

### POINT III

### THE ONLY CLAIM MADE IN THE COMPLAINT IS KOVENS' STATEMENT IN ¶12 THAT THERE WAS A CLOSING SCHEDULED FOR NOVEMBER 2, 2001

Kovens admits that he refused to close on November 2, 2001 because he would not be able to vote the stock, and then he filed a statement with the SEC on December 24, 2001 confirming that he had no agreement with Paul. Kovens never claims that he had any other date to close with Paul.

A statement in a complaint is a judicial admission which is binding on a party; *see, Bellefonte Re Ins. Co. v. Argonaut Ins. Co,* 757 F.2d 523, 528 (2d Cir. 1985).

In addition, as the Court stated in *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003):

> First, the allegations in the Second Amended Complaint are 'judicial admissions' by which Color Title Committee was 'bound throughout the course of the proceeding.' *Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)* (party cannot contradict its own pleading with affidavits ); see also *Soo Line R.R. Co. v. St. Louis Southwestern Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997)* ('plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts' and 'judicial efficiency demands that a party not be allowed to controvert that it has already unequivocally told a court by the most formal and considered means possible').

Here, Kovens admitted that on the alleged closing date he and his attorneys refused to close, and he confirmed in a sworn statement to the SEC that there was no agreement between Paul and him.

Accordingly, based on the facts set forth in Kovens' own complaint, if there ever was an agreement with Paul, it was abrogated by Kovens on November 2, 2001 when he refused to close.

## POINT IV

### KOVENS' STATEMENT TO THE SECURITIES & EXCHANGE COMMISSION ESTOPS HIM FROM CLAIMING THERE WAS AN AGREEMENT WITH PAUL

On December 24, 2001, Kovens filed a statement under oath with the SEC in connection with his proxy battle with other shareholders of USI.

In that statement under oath Kovens stated:

> To the knowledge of the Reporting Persons and except as set forth in the following sentence, no Reporting Person has any contacts, arrangements, understandings or relationships (legal or otherwise) with any persons with respect to securities issued by the Company. (Exhibit A, p. 11, ¶5(c)

Kovens has not explained or answered why he made the statement under oath to the SEC but now claims his lawyers told him to file the statement, an answer which is so frivolous so as to be unworthy of belief.

We have asked Kovens and his counsel to waive the attorney-client privilege in order to get behind this ridiculous statement, but they have refused to respond.

## CONCLUSION

Summary judgment should be granted to the defendant and Kovens' complaint be dismissed without any further delay, with leave for the defendant to file an application for costs and attorneys because this action was frivolous and brought for an ulterior motive to obtain discovery to be used by Kovens in his litigation in Maryland, and not for any legitimate purpose.

Dated:   New York, New York
         December 20, 2004

>                              Respectfully submitted,
>
>                              JAROSLAWICZ & JAROS
>                              Attorneys for Defendant
>                              150 William Street
>                              New York, New York 10038
>                              (212) 227-2780
>
>
>                              By:     s/David Jaroslawicz
>                                      *David Jaroslawicz (6931)*