**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MICHAEL L. KOVENS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) C. A. No. 1:04 Civ. 2238 (TPG) |
| | ) |
| **BRUCE H. PAUL,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MEMORANDUM REGARDING ILLEGALITY**

Plaintiff Michael L. Kovens ("Kovens"), by and through his counsel, hereby responds to Defendant Bruce H. Paul's ("Paul") Memorandum On Illegality Of The Purported Contract[1] and states as follows:

Paul argues in his Memorandum that the agreement between Paul and Kovens was illegal under the Maryland Control Share Acquisition Act ("MCSAA") (Md. Code, Corp & Assoc. §§3-701 et seq.) and, therefore, that the defense of unclean hands bars any recovery by Kovens. Kovens submits that the unclean hands defense is an equitable defense not applicable to this action at law; that Paul

---

[1] Paul has styled his October 25, 2005 submission as a "Memorandum on Illegality of the Purported Contract," yet he is seeking affirmative relief in the form of a judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. See Paul's Memorandum at 1 ("Paul should be granted judgment as a matter of law. FRCP 50"); 11 ("the defendant respectfully requests that he be granted judgment as a matter of law). Because Paul has failed to file a separate Motion, his request is procedurally defective. It is also procedurally defective in that it is premature because the Court has not yet entered judgment on the jury's verdict. However, if the Court does consider Paul's October 25, 2005 Memorandum to be a formal Rule 50 motion for judgment as a matter of law, Kovens requests the Court to consider this Response as his opposition thereto and Kovens respectfully requests the Court to deny Paul's motion.

failed in producing evidence of the defense even if it can apply to this action; that the Kovens-Paul contract did not trigger the MCSAA; that even if the MCSAA was implicated, the Kovens-Paul contract is not illegal; even if some aspect of the Kovens-Paul contract were illegal, it is severable.

## I.     THE UNCLEAN HANDS DEFENSE IS NOT APPLICABLE TO AN <u>ACTION AT LAW</u>

Paul argues in his Memorandum that Kovens intended to circumvent the MCSAA, and on that basis asks the Court to find that the Kovens-Paul contract is "illegal" and that Kovens comes to this Court with unclean hands. According to Paul, both the asserted illegality of the contract and Kovens' unclean hands provide grounds for this Court to deny any relief to Kovens. These defenses, however, are inapplicable to this action. Kovens seeks only money damages for Paul's breach of contract. Because Kovens does not seek the equitable aid of the Court, Paul can not interpose equitable defenses to Kovens' claim.

Under New York law, unclean hands is an equitable defense inapplicable to actions at law for damages. <u>JSC Foreign Economic Association Technostroyexport v. International Develompent and Trade Services, Inc.</u>, 386 F. Supp.2d 461, 477 (S.D.N.Y. 2005) ; <u>Digiulio v Robin</u>, 2003 WL 2108828 *5 (S.D.N.Y. 2003); <u>Aniero Concrete Co., Inc. v. New York City Const. Authority</u>, 2000 WL 863208 *10 (S.D.N.Y. 2000). Maryland law on this issue is not quite so clear on this issue because the Court of Appeals has not addressed it directly. In <u>Adams v. Manown</u>, 328 Md. 463, 615 A.2d 611 (1992), the Court of Appeals vacated a decision of the Maryland Court of Special Appeals (89 Md. App. 503, 598 A.2d 821 (1991)). The Maryland Court of Special Appeals concluded that the clean hands doctrine applies at law and therefore completely barred the plaintiff's claim. 328 Md.

at 472, 615 A.2d at 615. On appeal, the Court of Maryland Appeals vacated the lower appellate court's decision on other grounds and did not reach the issue of whether the clean hands doctrine applies to actions at law. The Court of Appeals decision does, however, indicate some hesitation with the notion that the equitable doctrine would apply in actions at law: "Manown's clean hands defense to Count I, *even if applicable* to a claim 'at law,' cannot be predicated on Adams's [conduct]." 328 Md. at 474, 615 A.2d at 616 (emphasis added). In a concurring and dissenting opinion, Judge Chasanow concluded that the clean hands doctrine is "applicable only when a litigant is seeking relief which is equitable in nature." 328 Md. at 487, 615 A.2d at 622.[2]

Like the unclean hands defense, the defense of illegality is also an equitable defense. United Elec. Supply v. Greencastle, 35 Md. App. 70, 373 A.2d 42 (1977); Bunge Corporation v. Manufacturers Hanover Trust Company, 65 Misc. 2d 829, 318 N.Y.S.2d 819 (1971). Because this is an action at law for damages, neither "unclean hands" nor "illegality" are appropriate defenses to Kovens' claims.

## II.  PAUL FAILED TO PROVE HIS EQUITABLE DEFENSES

Even if Paul could assert the equitable defenses of illegality and unclean hands in this action at law, Paul's defenses fail for the additional reason that at trial, he failed to put on sufficient proof of these defenses. From a procedural prospective, the evidence now being closed, the record is devoid of *evidence* of Paul's defenses. Paul's legal arguments in his Memorandum about the MCSAA are

---

[2] Judge Chasanow observed that in actions at law, the comparable defense to the clean hands defense is the defense of *in pari delicto*. 328 Md. at 487, 615 A.2d at 623. In Adams, as here, the defendant failed to raise a defense of *in pari delicto*. 328 Md. at 489, 615 A.2d at 623.

insufficient to cure Paul's evidentiary deficiencies at trial.

Thus, the Court correctly refused to instruct the jury on illegality because Paul failed to produce any evidence of illegality. Paul failed to present evidence of his unclean hands defense because he failed to present the language of the statute to the jury. See October 11, 2005 Trial Transcript (Trial Transcript Volume 3) ("10/11/05 Trial Tr.")[3] at 487, 489-90, 494, 495, 496; October 12, 2005 Trial Transcript (Trial Transcript Volume 4) ("10/12/05 Trial Tr.")[4] at 531, 543, 544. In fact, the Court ruled, and Kovens submits correctly, that by having failed to present evidence on the issue of illegality, Paul has waived this defense. 10/12/05 at 544.[5]

### III. THE KOVENS-PAUL CONTRACT DID NOT TRIGGER THE MCSAA

In his Memorandum, Paul argues that the Kovens-Paul contract fell squarely within the language of the MCSAA. To the contrary, as this Court observed, the language of the MCSAA does not expressly embody contracts to purchases shares and refers only to shares which have in fact been acquired. 10/11/05 at 487, 490-91. Section 3-701(e)(1) defines "control share acquisition" as "the acquisition . . . . of ownership of, or the power to direct the exercise of voting power with respect to" control shares. The MCSAA deals with the manner in which shares can be voted *after* they have been acquired. Attempting to surpass this clear hurdle in the language, Paul argues that Kovens had the power to *direct* the way in which Paul voted his stock ( Paul Memo. at 4) and therefore, under

---

[3] Pertinent portions of the October 11, 2005 Trial Transcript are attached hereto as Exhibit A.

[4] Pertinent portions of the October 12, 2005 Trial Transcript are attached hereto as Exhibit B.

[5] After the jury returned its verdict, the Court seemed to withdraw somewhat from this stance, stating that whether or not the contract was illegal under Maryland law was a legal issue for the Court's decision. 10/12/05 Tr. at 629.

4

Sections 3-701(d) and (e) of the MCSAA, Kovens came within the terms of the statute. It is, of course, undisputed that Kovens never came to own the shares, and there is absolutely no evidence in the record that Kovens had the power to *direct* the way Paul would vote his shares. An agreement between to shareholders as to how one will vote is not the same as having the power to *direct* the exercise of voting power. A trustee, for example, is *directed* by the terms of the trust as to how to vote. A shareholder who gives his irrevocable proxy to a second shareholder grants to the second shareholder the power to direct the vote of the shares of the first stockholder. A nominee who enters in to a nominee agreement has limited voting rights and powers. See Calvary Holdings, Inc. v. Chandler, 948 F.2d 59, 60-61 (1st Cir. 1991) (nominee, record owner of shares, entered into nominee agreement which provided the nominee had no rights, powers or obligation with respect to the shares other than as provided in the agreement and could exercise powers relating to the shares only in accordance with instructions from another). Kovens alleged, and the jury found, that Paul agreed he would cast his vote in alignment with Kovens. Kovens did not allege, and is no evidence, that Paul actually surrendered to Kovens the right to direct the vote of his shares. The Kovens-Paul agreement simply did not constitute a "control share acquisition" within the express terms of the MCSAA statute.

### IV.   EVEN IF THE MCSAA WAS TRIGGERED, THE KOVENS-PAUL CONTRACT IS NOT ILLEGAL

The MCSAA does not by its terms provide that contracts made in violation of it are void. In In re Mutual Funds Investment Litigation, 384 F. Supp.2d 873 (D. Maryland 2005), for example, the statute in issue, 15 U.S.C. Section 80a-46(b), expressly declared as void and unenforceable any agreement "made in, or whose performance involves,'" a violation of the statute. 384 F. Supp. at 880

5

(quoting 15 U.S.C. §80a-46(b))). Here, not only does MCSAA not contain any such language, it contains no penalties at all. Moreover, it is a statute which a corporation can choose to opt out of. MCSAA at §§3-702, 3-704.

Both New York and Maryland recognize that there is a difference between contracts which are *malum in se* and contracts which are *malum prohibitum*. A contract which is *malum in se* is void and unenforceable, but a contract which is *malum prohibitum* may be enforceable. Montagna v. Marston, 24 Md.App. 354, 330 A.2d 502 (1975); Springlakes v. Symmarron Limited Partnership, 81 Md.App. 694, 569 A.2d 715) (1990); Unger v. Leviton, 5 Misc. 3d 925, 928, 787 N.Y.S.2d 625, 628 (2004). Paul ignores this distinction.

In deciding whether to invalidate a contract *malum prohibitum*, the court will consider the effect of voiding the contract and will reject the illegality defense "where it would result in a forfeiture to one party, and an undeserved windfall to the other. 'Forfeitures by operation of law are disfavored, particularly where a defaulting party seeks to raise illegality as a "sword for personal gain rather than a shield for the public good."'" Unger v. Leviton, 5 Misc. 3d at 929, 787 N.Y.S.2d at 629 (2004) (quoting Lloyd Capital Corp. v. Pat Henchar, Inc., 80 N.Y.2d 124, 127, 589 N.Y.S.2d 396, 603 N.E.2d 246 (1992)); see also Dervin Corp. V. Banco Bilbao Vizcaya Argentaria, 2004 WL 1933621 (S.D.N.Y. 2004) ("'if the statute does not provide expressly that its violation will deprive the parties of their right to sue on the contract, and the denial of relief is wholly out of proportion to the requirements of public policy . . the right to recover will not be denied'") (quoting Benjamin v Koeppel, 85 N.Y.2d 549, 553, 650 N.E2d 829, 626 N.Y.S.2d 982, 983 (1995)). In Stardial Communications v. Turner Construction Company, 12 A.D. 3d 181, 182, 748 N.Y.S.2d 57, 58 (2004), the court rejected the

defense that the contract on which plaintiff relied was illegal and unenforceable because the plaintiff was not a licensed dealer under the applicable law:

> This defense is not viable. Even if the salvage activity contemplated by the contract would have entailed plaintiff's violation of the cited Code provision, that would not under the circumstances presented entitle [defendant] to avoid liability. In the instant case, violation of a Code provision would not be malum in se, but merely malum prohibitum, punishable by means of prescribed regulatory sanctions. The Code may not be used as a sword for private gain in litigation, particularly where a forfeiture would result. Moreover, it is by no means clear the plaintiff's salvage of architectural artifacts would have violated the code.

12 A.D. 3d at 182, 748 N.Y.S.2d at 58. As explained in Williston on Contracts:

> But in determining what validity, if any, a forbidden contract has, it is often important to consider how far and for what reason the prohibited transaction is wrongful, since the courts will endeavor to deal with the transaction so as to give effect to the fundamental purpose of the legislature and to the public policies underling its enactments. Accordingly, some contracts, considered *malum prohibitum* , have been found enforceable, as not violating the public policy underlying those statutes. The criteria employed for this determination have been aptly stated aby a federal appellate court: "The general rule that an illegal contract is void and unenforceable is, however, not without exception. It is not universal in its application. It is qualified by the exception that where a contract is not evil in itself, and its invalidity is not denounced as a penalty by the express terms of or by rational implication from the language of the statute which it violates, and that statute prescribes other specific penalties, it is not the province fo the courts to do so, and they will not thus affix an additional penalty not directed by the lawmaking power." [Footnotes omitted].

R. Lord, 8 Williston on Contracts §19:45 (4th Ed.) (citing Dunlop v. Mercer, 156 F.545 (8th Cir. 1907)). See Unger v. Leviton, 5 Misc. 3d at 928, 787 N.Y.S.2d at 628 (the general rule that illegal contracts are unenforceable "is not reflexively and universally applied . . . .").

Even assuming that the contract by which Paul was to sell his shares to Kovens, join in the special shareholders vote and vote in favor of Kovens' position would trigger the MCSAA in the same sense that Bowen testified - i.e., that the Paul-Kovens agreement would taint the shares -- the most

that could mean would be that at a shareholders' meeting, a shareholder could challenge the vote - it does not mean that Kovens and Paul could not enter into the agreement in the first place. Lowell Bowen testified at his deposition (which was read into evidence during the trial), that the MCSAA would not have made Kovens' purchase of the Paul stock illegal. Transcript of Deposition of Lowell R. Bowen ("Bowen Tr.") (pertinent portions of which are attached hereto as Exhibit C) at 52-53. Even Paul's counsel, during argument on this issue at trial, seemed to concede that there was nothing illegal about the contract itself. See 10/11/05 Trial Tr. at 488 ("He is engaged in conduct in connection with a contract, *albeit itself legal* . . . .) (emphasis added). The "contract," as the court instructed the jury, was a three part contract consisting of the agreement to sell the shares, the agreement to join in calling the meeting and the agreement to vote the shares in a way that was aligned with Kovens. Once Paul's counsel concedes that the "contract" is not illegal, the inquiry should be ended.

In attempting to show the illegality of the second and third parts of the contract, Paul, in his Memorandum, makes numerous bold statements about "prohibited conduct" and violations of Maryland public policy. For example, at page 7 Paul writes: "[t]he statute, by its *specific terms*, provides that such an attempt to circumvent its provisions *is illegal*." (Emphasis added). The statute, however, nowhere states that any actions are *illegal*, nor does it state that any actions are prohibited or void. Similarly, at page 8, Paul writes: "[t]he Maryland legislature . . . *expressly prohibited* the contract which [Kovens] seeks to enforce in this action." (Emphasis added). Again, the statute does not expressly prohibit anything. All that the MCSAA provides is that shares *falling within its terms* have no voting rights unless and until such voting rights are conferred on the shares. At page 9, Paul writes: "[t]he denial of any benefit to Kovens would promote the *public policy set forth in the*

*statute.*" (Emphasis added). The MCSAA itself, however, contains no statements of public policy and Paul has presented no legal authority to the Court shedding any light on any such public policies. Paul has simply failed to demonstrate the "illegality" of the contract.

Although the Court expressed the view that the shares would in fact have been tainted (10/11/05 Trial Tr. at 490), it is not so clear that they would have been tainted. Even assuming that the shares would have fallen within the terms of the MCSAA, the shares would not have been tainted in the absence of a shareholder vote. If there were something wrong about the Kovens-Paul contract by virtue of the MCSAA, the remedy would belong to the other shareholders and/or USI itself. The remedy would not be that Paul can breach his agreement without redress to Kovens and with a windfall to Paul.

### V. THE CONTRACT COULD BE SEVERED

Even assuming that Paul is correct in all respects - that he can avail himself of equitable defenses, that he sustained his burden of proof on his defenses, that Kovens was subject to the MCSAA even though he had not acquired shares, and that the provision of the agreement by which the closing would be postponed until after the shareholder vote was illegal because its purpose was to circumvent the MCSAA - Paul still is not entitled to a finding of liability in his favor. Under both Maryland and New York law, a contract which contains illegal provisions is unenforceable only to the extent of such provisions. State Farm Mutual Automobile Insurance Company V. nationwide Mutual Insurance Company, 307 Md. 631, 643, 516 A.2d 586, 591 (1986); Baldwin v. Grymes, 232 Md. 470, 473, 194 A.2d 285 , 286 (1963); Unger v. Leviton, 5 Misc. 3d 925, 929, 787 N.Y.S.2d 625,

9

629 (2004). There is no assertion by Paul that the discrete portion of the agreement by which Paul agreed to sell Kovens his shares was illegal. Accordingly, even if the Court were to find that the other two aspects of the contract were illegal and should be void, Kovens can still recover for Paul's breach of the remainder of the contract.

## CONCLUSION

For the foregoing reasons, Kovens respectfully requests the Court to reject Paul's arguments that the contract was illegal and that Kovens should be barred from recovery under the unclean hands doctrine. To the extent the Court addresses Paul's Memorandum as a Motion for Judgment as a Matter of Law, Kovens requests the Court to deny the Motion.

Respectfully submitted,

COOTER, MANGOLD, TOMPERT &
 WAYSON, L.L.P.

/s/
Dale A. Cooter, Esq., #2104
James E. Tompert, Esq., #9857
5301 Wisconsin Avenue, N.W.
Suite 500
Washington, D.C. 20015
(202)537-0700

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November 2005, a copy of the foregoing Plaintiff's Response to Defendant's Memorandum Regarding Illegality and supporting Exhibits was served electronically on:

>David Jaroslawicz, Esq.
>Jaroslawicz & Jaros
>150 William Street
>New York, New York 10038

and was also served electronically, and by facsimile on:

>Jon Paul Robbins, Esq.
>260 Madison Avenue
>New York, NY 10016

/s/
James E. Tompert