UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
MICHAEL KOVENS,

                Plaintiff,

        -against-

BRUCE H. PAUL,

                Defendant.
-----------------------------------------------------------------

04 Civ. 2238 (TPG)

(Electronically Filed)


## DEFENDANT'S RESPONSE TO PLAINTIFF'S BRIEF ON DAMAGES


**McLAUGHLIN & STERN, LLP**
**260 MADISON AVENUE**
**NEW YORK, NEW YORK 10016**
Attorneys for: Defendant

**Telephone  (212) 448-1100**
**Facsimile   (212) 448-0066**

## TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  The Law is Established that Damages Are Calculated
    as of the Time of the Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
MICHAEL KOVENS,

                    Plaintiff,

                                                 04 Civ. 2238 (TPG)

          -against-
                                                 (Electronically Filed)


BRUCE H. PAUL,

                    Defendant.
-----------------------------------------------------------------

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### BRIEF ON DAMAGES

#### Preliminary Statement

          Kovens contends that his damages should be based on the difference between the contract

price and the price of Universal's stock at the time of trial. Paul contends that under established

law damages must be based on the difference, if any, between the contract price and the fair

market value of the stock at the time of the breach of contract.[1]

          During the course of the trial, the Court noted the price of Universal's stock was very low

while Kovens was in control, and that the rise in price occurred under different management.

The Court stated that if it were to accept Kovens' theory of damages, there would be "a danger of

engaging in the kind of speculation" which the Second Circuit has directed the courts to avoid

---

[1] Of course, this is without prejudice to Paul's right to contend that there never was an enforceable contract.

1

Tr. 194-195.[2]   Later, the Court again noted that the rise in the Universal stock price had been achieved by different management, and that it would be "highly speculative" to find that Kovens could have achieved the same results. Tr. 357. The Court held that Kovens had not presented a viable damage theory. Tr. 499. The Court further noted that Kovens had chosen, for his own reasons, not to present the testimony of an appraiser, even though there are ways to evaluate the value of a control block of stock. Tr. 509; 512-513. As a result, the Court held that there is no proof of damages in the record. Tr. 518.

Kovens' latest submission provides no basis for the Court to reverse its earlier ruling. There are no damages, and Paul is entitled to judgment as a matter of law.

I

### The Law is Established that Damages Are
### Calculated as of the Time of Breach

Kovens relies mainly on three cases discussed at the beginning of his brief, but none of them is applicable to the case before the Court. Not one of them deals with the alleged breach of a contract to buy or sell securities. Not one of them deals with the question actually presented to this Court: assuming that Kovens has proven that Paul breached a contract to sell securities, how are his damages to be measured?

Kovens begins with a discussion of Bamira v. Greenberg, 295 A.D.2d 206, 744 N.Y.S.2d 367 (1st Dep't 2002), which is factually distinguishable. The Bamira plaintiff did not assert a claim for breach of a contract to sell securities. The contract in that case was a shareholders' agreement. The plaintiff claimed that his co-shareholder had violated that shareholders'

---

[2]Numerical references with the prefix "Tr." refer to pages in the transcript of the trial.

2

agreement, and also had breached his fiduciary duty, by misappropriating an opportunity to

acquire another company, in its entirety. The <u>Bamira</u> court was not presented with, and did not

consider, the measure of damages to be applied to a breach of contract to sell a finite number of

shares. It had before it a claim of theft of the right to buy an entire company. We have

examined the appellate record, and attach a copy of the complaint as Exhibit A   It is clear from

the complaint that the contract sued on in <u>Bamira,</u> a shareholders agreement pursuant to which

the parties had fiduciary duties to one another, is very different from the alleged contract sued on

by Kovens   <u>Bamira,</u> therefore, is of no help to Kovens, since it did not involve a contract for the

purchase or sale of securities.

     Moreover, if the Court deems <u>Bamira</u> inconsistent with the authorities we rely upon, that

case must be deemed to have been decided in error, for failure to follow the rule set forth in the

cases we have cited, particularly the New York Court of Appeals decision in <u>Simon v.</u>

<u>Electrospace Corp.,</u> 28 N.Y.2d 136, 320 N.Y.S.2d 225 (1971). The Court of Appeals set forth

the applicable law :

> "The proper measure of damages for breach of contract is determined by the loss
> sustained or gain prevented at the time and place of breach [citations omitted]. <u>The rule is</u>
> <u>precisely the same when the breach of contract is nondelivery of shares of stock</u> [citations
> omitted].... Plaintiff was never the owner of [the stock] just because defendant breached
> its contract to deliver the shares. That breach and the loss caused was fixed and
> determined in 1967 from which time plaintiff's cause of action accrued, and the Statute of
> Limitations started to run. That was, therefore, also the time when the value to him of
> plaintiff's performance was to be measured. It was then that plaintiff was to be made
> whole and not at some future time never specified in the agreement.... <u>His cause of action</u>
> <u>should not and may not be converted into carrying a market "call" or "warrant " to</u>
> <u>acquire the stock on demand if the price rose above the value as reflected in his cause of</u>
> <u>action.</u>" (Emphasis added).

<u>Simon v. Electrospace Corp.</u> has been cited and relied on by the Second Circuit in cases

3

we have previously cited. See, Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186 (2d Cir.

2003) and Sharma v. Skaarup Ship Mgt. Corp. 916 F.2d 820, 824, 826 (2d Cir. 1990). Simon, of

course, as an opinion of the New York Court of Appeals, has greater authority than the Appellate

Division's decision in Bamira. We repeat, however, that we do not believe Bamira is

inconsistent with our position. It simply was a different kind of case. As the Second Circuit held

in Sharma v. Skaarup Ship Mgt. Corp., supra:

> "The damage award resulting from the breach of an agreement to purchase securities is
> the difference between the contract price and the fair market value of the asset at the time
> of the breach, not the difference between the contract price and the value of the shares
> sometime subsequent to the breach ..."

> "Measuring contract damages by the value of the item at the time of the breach is
> eminently sensible and actually takes lost future profits into account. The value of the
> assets for which there is a market is the discounted value of the stream of future income
> that the assets are expected to produce. This stream of income of course includes
> expected future profits and/or capital appreciation." (Emphasis added).

This is the law, and the cases Kovens cites are not to the contrary.

Kovens next cites Mercantile Holdings, Inc. v. Keeshin, 261 Ill.App.3d 546, 633 N.E.2d

805 (App. Ct. of Ill. 1993). That case involved the breach of an "Assignment Agreement," which

was secured by stock already owned by the plaintiff, and which was wrongfully sold. The

defendant claimed that the plaintiff had a duty to mitigate. The court, however, held that the

plaintiff did not have to purchase other securities to mitigate losses when she already owned the

stock at issue. That factor distinguishes this case from the one before this Court. Kovens does

not claim he had no duty to mitigate; rather, he testified, based on unsupported hearsay evidence

consisting of alleged statements from unnamed brokers, that he could not "cover." Tr. 183.

In Mercantile Holdings, the defendant also claimed that the plaintiff had failed to "cover"

4

under the Uniform Commercial Code, and therefore was limited to damages measured by the

difference between the market price at the time the buyer discovered the breach and the contract

price, per UCC Sections 2-712 and 2-713. Of course, this is the mirror image of the measure of

damages utilized in <u>Rosencraft v. Ashton Technology Group, Inc.</u>, 1998 WL 101959 (S.D. N.Y.

1998), which the Court brought to the parties' attention. It is the same measure of damages we

urge here.

The defendant in <u>Mercantile Holdings</u> was not afforded the benefit of that measure of

damages, but for reasons that make that case inapplicable to ours. The <u>Mercantile Holdings</u> court

stated that the

> "parties were not buying and selling goods or securities. Moreover, the gist of this case is
> not a wrongful sale of the stock by Mercantile, but rather the gist of this case is a
> wrongful breach of the Assignment Agreement by [defendants]. Plainly, the Uniform
> Commercial Code has no application to this case."

Of course, in the case before this Court, the "gist" is the alleged breach of contract to sell

securities. The measure of damages set forth in the Uniform Commercial Code, the difference

between the "cover" price and the contract price, or, alternatively, the difference between the

contract price and the market price at the time of breach, is the same measure set forth in the

cases we have cited in our previous submissions. It is the measure that this Court should apply.

Kovens next cites <u>American National Bank and Trust Co. v. Erickson</u>, 115 Ill. App. 3d

1026 (App. Ct. of Illinois 1983), which is inapplicable as well. In that case, as in <u>Mercantile</u>

<u>Holdings</u>, the plaintiff had lent the defendant stock belonging to plaintiff, which the defendant

failed to return. Once again, that was not a case where a defendant had breached a contract to

buy or sell stock; to the contrary, it was a case where the defendant failed to return to plaintiff the

5

property that already belonged to plaintiff. That simply is not our case.

In sum, Kovens relies primarily on three decisions which involved fact patterns very different from the one he presents to this Court. We, on the other hand, have cited controlling authorities directly on point which recognize the well established rule that the damages for breach of a contract to buy or sell stock must be ascertained as of the date of the breach. Kovens does not try to distinguish them or claim that they are wrongly decided. He simply ignores them.

We again refer the Court to Schonfeld v. Hilliard, 218 F.3d 164 (2d Cir. 2000); Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186 (2d Cir. 2003), Sharma v. Skaarup Ship Mgt. Corp. 916 F.2d 820, 824, 826 (2d Cir. 1990); Simon v. Electrospace Corp., 28 N.Y.2d 136, 320 N.Y.S.2d 225 (1971); Aroneck v. Atkin, 90 A.D.2d 966, 456 N.Y.S.2d 558 (2d Dep't 1982); and Levine v. Chambers, 141 Md. 336, 118 A.2d 798, 800 (Ct. of App. Md. 1922). The last cited decision shows that Maryland law is the same as New York's. The Maryland court held that:

> "The true measure of damages, in cases of this kind, would be the difference between the sum of $1,500, which the defendant agreed to pay for the stock, and the value of the stock at the time the defendant repudiated the alleged agreement." (Emphasis added).[3]

The Court brought the Uniform Commercial Code to the attention of the parties. The rule set forth in the Code is the same. An aggrieved buyer's remedy is to "cover" by buying substitute goods and then recovering the difference, if any, between the cover price and the contract price. UCC 2-712.[4] Alternatively, the buyer may recover the difference between the market price at

---

[3] This case is the answer to Kovens' citations of Maryland cases standing for the general proposition that damages are meant to put the aggrieved party in the position he would have been in but for the breach. No one disputes that generality. The issue here is how that is to be achieved when there is a breach of a contract to sell securities.

[4] The Uniform Commercial Code sections are the same in New York and Maryland.

6

the time of breach and the contract price. UCC 2-713.

The Court also directed the parties' attention to <u>Rosencraft v. Ashton Technology Group, Inc.,</u> 1998 WL 101959 (S.D. N.Y. 1998). That case involved an aggrieved seller's remedies under the Uniform Commercial Code. There, the aggrieved seller made "commercially reasonable" efforts to sell to a substitute buyer, as permitted by UCC 2-706. That is why the <u>Rosencraft</u> court did not rely on the difference between the market price at time of breach and the sales price.

The case before this Court presents the mirror image of the <u>Rosencraft</u> fact pattern. It involves the remedy available to an aggrieved buyer, i.e., the right to "cover" under UCC 2-712, and then recover as damages, the difference, if any, between the cover price and the market price. Here, as the Court noted, Kovens admittedly did not even try to cover. He did not try to buy even one share. Tr. 512. Kovens is therefore relegated to the difference, if any, between the market price at time of breach and the contract price, pursuant to UCC 2-713.

Thus, if the fair market value at the time of the breach is less than, or the same as, the price set in the alleged contract, Kovens cannot prove any damages. Kovens admits he made no effort to cover. Nor did he make any effort at the trial to prove that the fair market value at time of breach was higher than the contract price. It follows that Kovens has not proven any damages, and that Paul is entitled to judgment as a matter of law.

Kovens cites a number of other cases, none of which stand for the proposition that the shares should be valued as of the time of trial. In fact, these cases actually support Paul's position.

In <u>Biolife Solutions, Inc. v. Endocare, Inc.</u> 838 A.2d 268 (Del. Chancery 2003), the

7

plaintiff sought damages for failure to register shares, and the court held that damages were to be measured by what plaintiff could have sold the shares for <u>within the week following the breach</u>. There was no claim that damages were to be based on the value of the stock as of the time of trial.

Kovens also cites <u>General Grain, Inc. v. Goodrich</u>, 140 Ind. App. 100, 221 N.E. 2d 696 (1967). In that case, the issue was the fair market value of stock as of the date of the merger, and <u>not</u> as of the date of the trial. The court stated that both parties were entitled to have a determination as to that value. The dispute concerned the proper method of valuation of the stock as of that date, and the appellants objected to the methods used by the appraiser. The court agreed that many factors could be used in making such a determination, including book value, liquidating value, stock market value, the market available, and other factors as well. Again, there was no claim that the stock should have been valued as of the date of the trial.

This case is instructive because it notes the use of an appraiser. Here, of course, Kovens did not seek an appraisal of the stock as of the date of the breach. The Court also noted that there probably was a "very good" reason Kovens did not provide an opinion from an appraiser. Tr. 509. We believe that the Court was correct. We have no doubt that an appraiser would have found that the stock was not worth more than the contract price at time of breach. That, of course, makes perfect sense, because Kovens would not have agreed to overpay and Paul would not have agreed to undersell. Indeed, Kovens and Paul both testified that the book value of the stock in January of 2001 was about the same as the contract price. Tr. 76-77; Tr. 229. That is why there are no damages. The contract price, which included a premium for a control block of shares, accurately reflected the market value.

8

Similarly, <u>Dynamics Corp. of America v. Abraham & Co.</u>, 5 Misc. 2d 652, 166 N.Y.S.2d

128 (Sup. Ct. N.Y. Co. 1956), involved an appraisal proceeding, where the appraiser considered

the stock price as a concededly significant criterion, among others, in determining the fair market

value of the stock. Again, there was no claim that the stock should be valued as of time of trial.

This case shows, once again, that Kovens should have engaged an appraiser. Kovens should

have followed the path of the plaintiff in <u>Boyce v. Soundview Technology Group, Inc.</u>, 2004 WL

2334081 (S.D.N.Y. 2004), who engaged an expert to testify as to the fair market value of the

stock at the time of breach. Kovens did not, and he is bound both by his failure of proof and by

the established measure of damages. The Court correctly ruled that Kovens does not have a

damage theory and that the record contains no proof of damages. Tr. 499; Tr. 518.

<u>Falls v. Fickling</u>, 621 F.2d 1362 (5th Cir. 1980), also supports defendant. Once again, the

court noted that the value of the stock was to be determined as of the date of the alleged wrong.

It further noted that if the sales price were the same as the fair market value at the time of the

alleged wrong, defendant would have "nothing to fear because appellant would be unable to

prove any damages." 621 F.2d at 1368. Although the court did reject the contention that the

trading price at date of breach conclusively establishes its value, that does not help Kovens

because, again, he did not introduce any other evidence of value as of the date of breach. Under

<u>Falls</u>, because the fair market value is the same as the contract price, Paul has "nothing to fear

because [Kovens was] unable to prove any damages."

Kovens cites <u>Amodio v. Amodio</u>, 70 N.Y.2d 5, 516 N.Y.S.2d 923 (1987), another case

which supports Paul's position. The court noted that the IRS had declared that appropriate

factors to be considered in valuation for tax purposes include: nature and history of the business;

9

its particular economic outlook; the book value and financial condition of the business; earning

capacity; dividend paying capacity; goodwill and other intangible assets; other sales of the stock;

and market price of comparable corporations. The court also noted that an agreement fixing the

price of the stock is a factor to be considered. In <u>Amodio</u>, no party argued that the stock should

be valued as of time of trial. Also, in that case, an expert testified as to his appraisal of the value.

In our case, of course, Kovens did not introduce any evidence with respect to the IRS factors

Nor did he produce an expert to testify as to an appraisal based on those factors. Further, we

have an alleged agreement, negotiated at arms' length, which valued the stock. Once again,

under <u>Amodio</u>, Kovens failed to prove his case.

No party in <u>Estate of Godley v. Comm'r of Internal Revenue</u>, 286 F.3d 210 (4th Cir. 2002)

claimed that the stock should be valued as of the date of the trial. There, the court noted that if

there is no ready market for stock, the fair market value is determined by the standard enunciated

in <u>United States v. Cartwright</u>, 411 U.S. 546, 551 (1973), the price which a willing buyer will

pay a willing seller. Of course, this is the same standard adopted by the Second Circuit in

<u>Schonfeld v. Hilliard</u>, 218 F.3d 164 (2d Cir. 2000). The <u>Godfrey</u> court carefully considered the

expert testimony as to value, of which there is none in the case before this Court. The court also

noted that there may be a premium for a control block of shares, and, of course, in our case the

alleged contract, which was for three times the current market, already had factored in such a

premium. There simply is no reason to hold that Paul's stock, at time of breach, was worth more

than the contract price.

<u>Greene v. Safeway Stores, Inc.</u>, 219 F.3d 1237 (10th Cir. 2000) is an options case, and

therefore has no application here. Moreover, the plaintiff in that case did not claim that his

options should have been valued as of the time of trial; rather, he claimed they should have been valued as of a date when he still had the right to exercise them. Accordingly, Greene does not support Kovens' claim that he is entitled to damages based on the current value of the Universal Security stock.

Kovens also cites Lawrence Fund, L.L.P. v. Helionetics, Inc., 1996 WL 352911 (S.D.N.Y. 1996). Once again, that case supports Paul. It is another case that discusses the damages resulting from the failure to register shares. The parties agreed that damages should be calculated as of the date the registration statement could reasonably have been expected to be effective, i.e., the date of the breach of contract. 1996 WL 352911 *2. The only dispute was over when that breach had occurred. In our case, there is no dispute about the breach. Kovens testified that he learned that Paul would not sell him the stock in early January, 2002 (Tr. 112), and that Paul revoked his request for a shareholders' meeting on January 28, 2001 (Plaintiff's Ex. 20). Kovens was required to present a valuation of the stock within that time frame. He failed to do so.

We also bring to the Court's attention Kovens' testimony that had he purchased Paul's stock, he would not have been able to sell it because of the restrictions placed upon him by Rule 144. In fact, he testified that he would not have been able to sell the Paul's shares as of the date of trial:

> "Q. (by Kovens' attorney): Under that scenario, would you have been able to sell any of the Paul shares even up to today?
>
> A. No." Tr. 124.

This shows, once again, that Kovens' claim is based on pure speculation. Not even

11

Kovens has claimed to know what the stock's price will be on some date in the future when he would have been able to sell, if he had acquired Paul's stock.

Finally, Kovens, in an implicit admission that damages are to be calculated as of the date of breach, asks the Court to consider a new declaration from Mr. Rosenberg. That Declaration states (Para. 8) "that the value of Paul's stock was the same on the date of breach (on or about January 28, 2002) and September 28, 2005." Of course, Mr. Rosenberg's declaration should not be accepted. If Kovens had desired to submit a declaration stating that the value of the stock was the same on both the date of breach and the date of trial, he should have done so long before now. Kovens rested, and called no rebuttal witnesses. Tr. 536. He may not now present purported new evidence by way of a declaration which is not subject to cross-examination.

Further, and perhaps even more importantly, Mr. Rosenberg's declaration makes no sense. He says that Paul's stock was worth more than $3,000,000.00 in January of 2001. If this had been so, we respectfully suggest that Mr. Paul, an extremely sophisticated investor, would not have sold it for about $500,000.00

Mr. Rosenberg does not give any rational basis for his conclusion. Certainly, he does not cite any objective factors, such as those utilized by the IRS and the other cases cited above. Indeed, the use of those objective factors shows the fallacy of Mr. Rosenberg's position. We know that the trading price was about one dollar per share. We also know that the book value was about equal to the contract price, according to both Kovens and Paul, and that was the basis for the alleged contract price, which included a substantial premium over market. Tr. 76-77; Tr. 229. Presumably, the two parties agreed that this was a fair premium for a control block. Yet, Mr. Rosenberg claims that <u>at the time of the breach,</u> the stock was worth about seven times more

12

than the parties had agreed, and nearly twenty times the trading price. This is preposterous on its face. It should be recognized for what it is: an attempt to "end run" the established rule that damages are to be calculated as of the date of breach.

The Court also should note that Mr. Rosenberg's declaration is based in part on the alleged contract requirement that Paul had to vote his stock in accordance with Kovens' instructions. We have shown in our prior submission that this contractual provision, which allegedly was a crucial part of the deal, was itself illegal. Mr. Rosenberg's valuation should be disregarded on this ground as well.

Conclusion

For all the foregoing reasons, the defendant respectfully requests that the Court re-affirm its ruling that Kovens has not presented a viable damages theory and that there is no proof of damages in the record. Defendant should be granted judgment as a matter of law.

New York, New York
November 1, 2005

Respectfully submitted,
McLaughlin & Stern, LLP

By _____
Jon Paul Robbins (#8517)
Attorneys for Defendant
Bruce H. Paul